**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CHAMPIONSHIP TOURNAMENTS, LLC,** | * | |
| **d/b/a/ ELITE TOURNAMENTS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil Case No. SAG-18-02580** |
| | * | |
| **UNITED STATES YOUTH SOCCER,** | * | |
| **ASSOCIATION, INC.,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

*       *       *       *       *       *       *       *       *       *       *       *       *       *

<u>**MEMORANDUM OPINION**</u>

Championship Tournaments, LLC, d/b/a Elite Tournaments ("Elite") filed this breach of contract claim in August, 2018 against Defendants United States Youth Soccer Association, Inc. d/b/a US Youth Soccer, United States Youth Soccer Association, Inc. d/b/a US Youth Soccer Region I, United States Youth Soccer Association, Inc. d/b/a Eastern Regional League, and United States Youth Soccer Association, Inc. d/b/a US Youth Soccer Region I-Eastern Regional League (collectively "USYSA"). Now pending before this Court are Motions in Limine filed by USYA, ECF 100, ECF 101, ECF 102, and by Elite, ECF 106. The motions have been fully briefed, ECF 104, ECF 105, ECF 106, ECF 109, ECF 110, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons explained below, the Court will grant in part and deny in part USYSA's motions, and will deny Elite's motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Elite is a Maryland limited liability company specializing in youth sports events, and providing services including "facility staffing, booking services, and full service event management." ECF 1-3 ¶¶ 7, 13. USYSA is a Tennessee non-profit corporation providing

programing and resources for roughly 10,000 competitive youth soccer clubs and leagues throughout the country.  ECF 96 at 1.  USYSA registers nearly three million youth soccer players annually, and is the largest member of the United States Soccer Federation, the nation's governing soccer body.  ECF 1-3 ¶ 15.  USYSA maintains league structures for competitive youth soccer teams, which were previously organized into four geographic regions: the East, Midwest, South, and West.  *Id.* ¶ 17.

On October 7, 2016, Elite and USYSA entered into an exclusive three-year contract, which required USYSA and its Eastern Regional League member clubs to participate in Elite owned/managed soccer events ("the Contract").  ECF 96 at 2; ECF 1-3 ¶ 2.  The Contract provided that Elite would be responsible for the costs and expenses of managing the events, and that in return, it would enjoy exclusive rights to the revenue generated thereof.  ECF 96 at 2; ECF 1-3 ¶ 35.  Pursuant to the Contract, Elite managed youth soccer tournaments for USYSA in 2017 and 2018, and was paid $1,336,129.27.  ECF 96 at 2; ECF 1-3 ¶ 46.

In April, 2018, USYSA unilaterally announced via a press release that it would be eliminating its regional league system in favor of national conferences, and that it had entered into a long-term agreement with another entity, EDP Soccer, to manage conferences in the geographic area formerly designated to Elite.  ECF 1 ¶¶ 47-50.  Upon reading the press release, Elite contacted USYSA and was told in no uncertain terms that USYSA and its member clubs would not participate in Elite's 2019 events.  ECF 96 at 2-3.

Elite filed suit against USYSA in the Circuit Court for Howard County, Maryland in June, 2018 alleging breach of contract (Count I), anticipatory breach (Count II), and seeking declaratory judgment (Count III).  *See* ECF 1; ECF 1-3.  The action was removed to this Court in August, 2018.  *Id.*  In its Amended Answer, USYSA "admit[ted] the existence and term of its Contract

with Elite as discussed in the Complaint, admit[ted] that Elite performed pursuant to the Contract, and admit[ted] that USYSA breached the Contract." ECF 58 ¶ 4. Subsequently, Elite moved for summary judgment on the issue of liability for all counts, ECF 59, while USYSA moved for judgment on the pleadings as Elite's claim for declaratory relief in Count III, ECF 62.

In December, 2018, this Court entered a Memorandum Opinion and Order resolving the parties' respective motions, ECF 66. This Court granted Elite's Motion for Summary Judgment on liability as to Counts I-II, denied Elite's Motion as to Count III, and granted USYSA's Motion for Judgment on the Pleadings as to Count III. *Id.* With respect to Elite's claim for declaratory relief in Count III, this Court determined that judgment was warranted in USYSA's favor because the declaration was duplicative of Elite's substantive claims in Counts I-II. ECF 66 at 2 (observing that Elite's request for a declaration that USYSA is a party to the Contract, and is liable for the damages incurred by its breach or anticipatory breach is entirely duplicative of the elements of its breach of contract claims). Moreover, to the extent that Elite sought a declaration awarding attorneys' fees for the prosecution of this action, judgment was warranted because "[t]he Declaratory Judgment Act does not create any additional entitlement to monetary remedies, and cannot be used to vitiate the American rule." *Id.* at 2-3 (explaining that the American rule applies to breach of contract cases in Maryland, unless a contract expressly provides otherwise).

As a result of this Court's Opinion and Order, the only issue to be resolved at trial is the amount of damages to which Elite is entitled as a result of USYSA's breach of the Contract. Elite contends that as a result of USYSA's breach, it lost profits in the amount of $332,472, and it seeks prejudgment interest on this amount calculated at 6% per annum. ECF 96 at 6. Elite further posits that due to USYSA's breach, it was forced to cancel the 2019 Under Armour Spring Shootout Tournament, which rendered Elite unable to honor its preexisting contract with the tournament's

host, the Fredericksburg Football Club ("FFC"). *Id.* at 6-7. Elite accordingly seeks consequential damages in the amount of $20,4770, corresponding to the amount that Elite paid to settle a subsequent breach of contract claim brought against it by FFC, plus $4,700 it incurred in legal fees defending FFC's claim (hereinafter referred to as "FFC Settlement"). *Id.* at 7. For its part, USYSA contests Elite's calculation of its lost profits, and objects to Elite's claim for prejudgment interest. *Id.* at 4. Following several postponements in light of the COVID-19 pandemic, this Court scheduled a jury trial to commence in May, 2022. ECF 95.

## II.   LEGAL STANDARD

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Maryland*, No. CV ELH-17-804, 2018 WL 2717834, at *7 (D. Md. June 6, 2018) (unpublished) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983). Typically, pretrial motions in limine seek to exclude prejudicial evidence before it is offered at trial. *Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). These motions help to streamline a case by allowing the Court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987); *see also Changzhou Kaidi*, 102 F. Supp. 3d at 745 ("[Motions in limine] are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013))). Motions in limine further promote judicial efficiency by preserving the issues raised for appeal and eliminating the need for parties to renew their objections at trial, "just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996); *see* Fed. R. Evid. 103(a); *cf.* R. 103(a) advisory committee's

note to 2000 amendment (acknowledging that Rule 103(a) "applies to all rulings on evidence . . . including so-called '*in limine*' rulings").

Generally, courts should grant a motion in limine "only when the evidence is clearly inadmissible on all potential grounds." *Dorman v. Anne Arundel Med. Ctr.*, No. MJG-15-1102, 2018 WL 2431859, at *1 (D. Md. May 30, 2018) (quoting *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017)). Ultimately, rulings on these motions fall within the Court's "broad discretion." *Kauffman v. Park Place Hospitality Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012); *see also United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (noting that evidentiary rulings fall within a trial court's discretion).

## III.   ANALYSIS

### A.   USYSA's Motion to Exclude Evidence of Attorneys' Fees

USYSA seeks a ruling from this Court to exclude "testimony or evidence relating to Elite's counsel's time or cost incurred to pursue this case against USYSA, including any implication that the jury should compensate for such expense in its damage award." ECF 100 at 1-2. USYSA argues that because this Court has already rejected Elite's request for an award of costs and fees incurred in this action, ECF 66 at 2, any evidence on the subject is not relevant and must be excluded. For its part, Elite avers that although it will not introduce evidence regarding attorneys' fees for this action, it objects to the motion insofar as it would preclude evidence of attorneys' fees that Elite incurred as part of the FFC Settlement. ECF 104 at 4.

"Parties are indeed bound by ultimate findings made by the Court as a matter of law in its prior ruling[s], so long as those findings have relevance to the issues . . . which will be presented to the jury." *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 571 (D. Md. 2001). Having earlier concluded that Elite may not recover the costs of prosecuting this action, this Court will not permit evidence to the contrary. This Court's earlier determination that the American rule requires Elite

to bear its own costs and fees in this action, however, had no impact on Elite's position that its costs arising from the FFC Settlement are recoverable as consequential damages. *See Simard v. Burson*, 197 Md. App. 396, 414–15, 14 A.3d 6, 16 (2011), *aff'd*, 424 Md. 318, 35 A.3d 1154 (2012) ("Consequential damages cover those losses suffered by the non-breaching party other than the loss in value of the other party's performance . . . [s]uch damages must be reasonably foreseeable and must . . . be supposed to have been in the *contemplation of both parties* at the time they made the contract, as the probable result of the breach") (internal citations and quotation marks omitted) (emphasis in original).

This Court does not interpret USYSA's motion as seeking to exclude evidence of costs and fees incurred as part of the FFC Settlement. *See* ECF 100 at 3 (requesting exclusion of "Evidence of Attorney's Fees Incurred By Plaintiff to Prosecute Breach of Contract Lawsuit *against USYSA*.") (emphasis added); *id.* ("Plaintiff should be precluded from any testimony or evidence relating to counsel's time or cost incurred t*o pursue this case against USYSA*.") (emphasis added). This Court will accordingly grant USYSA's motion to exclude testimony or evidence regarding attorneys' fees incurred by Elite in connection with this action. As discussed, this Court's ruling does not prejudice Elite's ability to submit evidence in support of its request for consequential damages relating to the FFC Settlement.

**B. USYSA's Motion to Exclude Cumulative Evidence Regarding Liability**

USYSA asks this Court to preclude "cumulative" evidence on the issue of liability. Although USYSA concedes that "the jury needs to understand the background of the parties' relationship and the existence of the breach of contract," it insists that because liability has already been resolved by this Court, "there is no relevance of particular items likely to be introduced by Plaintiff." ECF 100 at 3. USYSA further requests that this Court prohibit Elite from "introducing

evidence regarding the nature of USYSA's admission of liability in the lawsuit, [and] the timing after depositions had been taken." *Id*.

The scope of USYSA's proposed order is both vague and potentially overbroad. Although USYSA correctly observes that the question of liability is not before the jury, evidence regarding the parties' Contract and resulting breach provide necessary context—and are therefore relevant—to the issue of damages to be awarded thereof. Moreover, despite stating that "particular items" lack relevance, USYSA does identify any specific evidence or testimony that it contends falls within this characterization. Where, as here, a party seeks a general exclusion of a broad or vaguely defined category of evidence, "the best course of action is to deny the motion and see how the case unfolds." *A.Hak Indus. Servs. BV Techcorr USA, LLC, Techcorr USA Mgmt., LLC v. A.Hak Indus. Servs. B.V.*, 2014 WL 12591696, at *1 (N.D.W. Va. Dec. 18, 2014) (citing *E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc.*, 564 Fed. Appx. 710 (4th Cir. 2014)).

Despite the ambiguous nature of USYSA's request, however, this Court acknowledges that evidence regarding the timing and sequence of its admission of liability has negligible relevance and is potentially prejudicial. This Court discerns no manner in which the circumstances surrounding USYSA's admission of liability—including the timing of its Amended Answer conceding liability subsequent to testimony by former USYSA employees and board members—could be probative to the calculation of damages. This Court will accordingly grant USYSA's motion insofar as it would preclude evidence regarding the procedural history of this case, and deny the motion insofar as it would exclude the admission of any other relevant evidence.

**C. USYSA's Motion to Exclude Evidence Regarding Prejudgment Interest**

USYSA asks this Court to preclude evidence concerning prejudgment interest that Elite contends it is owed.  ECF 101 at 1.  In support of its motion, USYSA argues that prejudgment interest should not be awarded "given the significant dispute as to the value of any damages incurred by Plaintiff in the form of lost profits."  *Id.* at 3.  In opposition, Elite asserts that: (1) with respect to damages for lost profits, prejudgment interest may be awarded at this jury's discretion; and (2) with regards to damages for the FFC Settlement and related attorneys' fees, it is entitled to prejudgment interest as a matter of right.  ECF 105 at 1-2.  This Court finds the first of Elite's arguments persuasive, and will accordingly deny USYSA's motion.

The parties agree that Maryland law maintains "three basic rules governing the allowance of pre-judgment interest."  *Parkway 1046, LLC v. U. S. Home Corp.*, 961 F.3d 301, 311 (4th Cir. 2020) (quoting *Harford Cty. v. Saks Fifth Ave. Distribution Co.*, 399 Md. 73, 923 A.2d 1, 13 (2007).  Under Maryland law:

1.  Prejudgment interest must be granted where the obligation to pay and the amount due were certain, definite, and liquidated by a specific date prior to judgment.  Interest accrues from when payment was due.

2.  Prejudgment interest may not be granted in tort cases where the recovery is for bodily harm, emotional distress, or similar intangible elements of damage not easily susceptible of precise measurement.

3.  Prejudgment interest may be granted, but is not required, in the remaining broad category of contract cases.  In this catchall category, which is the default for contract cases, whether to order prejudgment interest is within the discretion of the trier of fact.

*Id.* (internal citations and quotation marks omitted).  In analyzing whether a breach of contract claim falls within the first or third categories, courts must analyze "their level of certainty as to the existence, amount, and due date of an obligation to pay."  *Id.* at 312.  Whether the obligation is certain and definite, mandatory prejudgment interest is appropriate to rectify the "creditor of the

use of a fixed amount as of a known date." *Buxton v. Buxton*, 363 Md. 634, 770 A.2d 152, 165 (2001).  By contrast, where the damages, or the repercussions, of withholding payment is less certain, "the trier of fact has discretion to award prejudgment interest as appropriate to the unique circumstances of the case." *Parkway 1046*, 961 F.3d at 312.  "In such cases, pre-judgment interest may be awarded 'according to the equity and justice appearing between the parties.'"  *Bresler v. Wilmington Tr. Co.*, No. CIV. PJM 09-2957, 2015 WL 4385994, at *3 (D. Md. July 10, 2015) (quoting *I.W. Berman Prop. v. Porter Bros., Inc.*, 276 Md. 1, 344 A.2d 65, 74 (Md. 1975)).

Although prejudgment interest is generally left to the fact finder in cases falling within the third category, courts may, in limited circumstances, remove the issue from jury consideration prior to a verdict.  *See Baker's Exp., LLC v. Arrowpoint Cap. Corp.*, No. CIV.A. ELH-10-2508, 2012 WL 4370265, at *28 (D. Md. Sept. 20, 2012) (collecting cases).  USYSA relies on one such case, *Baltimore County v. AECOM Services, Inc*., 200 Md. App. 380, 28 A.3d 11 (2011), to argue that "given the significant dispute as to the value of any damages incurred by Plaintiff in the form of lost profits, prejudgment interest should not be allowed at all."  ECF 101 at 3 (citing *AECOM*, 200 Md. App. at 429-30).  In *AECOM*, Baltimore County filed suit against DMJM alleging breach of contract and negligence; DMJM, in turn, filed a counterclaim against Baltimore County alleging breach of contract and seeking payment for services.  *Id.* at 387.  The trial court refused to submit to the jury the issue of prejudgment interest on DMJM's counterclaim, the evidence of which consisted of 56 distinct estimates of prejudgment interest, corresponding to 56 invoices sent by DMJM, and ranging in amounts from $0 to $57,000.  *Id*. at 430.  On appeal, Maryland's intermediate appellate court concluded that the trial court's refusal to submit such evidence to the jury prior to the verdict did not constitute an abuse of discretion.  *Id.* at 430-31.  In doing so, the court "h[e]ld that where breach of contract damages are unliquidated or not reasonably

ascertainable until the verdict, a party is not entitled to a discretionary determination on the issue of prejudgment interest by the jury, prior to the verdict in the case." *Id.* at 429-30.

USYSA's reliance on *AECOM* is misplaced.  In *AECOM*, the court concluded that where liability and damages for an alleged breach of contract are disputed, the trial court may properly exclude evidence on the issue of prejudgment interest prior to a verdict.  *AECOM* did not hold that prejudgment interest may never be put to a jury where the amount of damages is disputed, nor did it purport to disturb Maryland's longstanding rule that in "the vast majority of contract cases," "prejudgment interest is left to the discretion of the trier of fact." *Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*, 473 Md. 178, 193, 248 A.3d 1044, 1053 (2021).  USYSA's argument also fails insofar as it seeks to analogize the facts of *AECOM* to the instant action.  In contrast to *AECOM* the case at hand does not involve competing claims of liability or convoluted interest calculations corresponding to over fifty invoices spanning multiple years.  In this action, this Court has already determined USYSA's liability for breach of the Contract. The parties' outstanding dispute centers primarily on their competing estimates of the amount of profits that Elite lost as a result of the breach, the use of which Elite contends it has been denied since a single date, January 1, 2020.  *See* ECF 105 ¶ 13.  Contrary to USYSA's assertions, "the significant dispute as to the value of . . . lost profits," does not necessarily preclude Elite from prejudgment interest; it merely forecloses prejudgment interest as a matter of right.[1]  USYSA's motion will therefore be denied.[2]

---

[1] Notably, *AECOM* does not support USYSA's assertion that where damages are significantly in dispute, "prejudgment interest should not be allowed at all."  ECF 101 at 3.  To the contrary, the court in *AECOM* expressly clarified that "[p]rejudgment interest, however, would not have been absolutely disallowed on DMJM's breach of contract claim, assuming the jury entered a verdict in its favor." *AECOM*, 200 Md. App. at 424.  The court's inquiry was instead confined to whether a trial court may permissibly withhold evidence of prejudgment interest before verdict.

[2] USYSA's citation to *Seton v. United Gold Network, LLC*, 2008 WL 1925180 (D. Md. Apr. 30, 2008) is wholly inapposite.  ECF 109 at 2.  In that case, the magistrate judge recommended against

Notably, Elite contends that although prejudgment interest for its lost profits is discretionary, prejudgment interest is mandatory on the damages arising from the FFC Settlement and attorneys' fees arising thereof.  Elite has made no motion to this effect, which would permit this Court to consider USYSA's argument, if any, in opposition.  It is sufficient at this juncture, therefore, to deny USYSA's motion.

### D.  Cross Motions to Exclude Expert Testimony

Finally, the parties submit dueling motions to exclude certain testimony to be elicited from their respective counterparties' proposed experts.  The Federal Rules of Evidence "permit[] an expert to testify where the expert's 'scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue,' so long as the expert's opinion is 'based on sufficient facts or data,' 'is the product of reliable principles and methods,' and the expert 'has reliably applied the principles and methods to the facts of the case.'"  *In re Lipitor (Atorvastatin Calcium) Mktg.*, 892 F.3d 624, 631 (4th Cir. 2018) ) (citing Fed. R. Evid. 702).  "In assessing the admissibility of expert testimony, a district court assumes a 'gatekeeping role' to ensure that the 'testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  The reliability of specialized knowledge may be measured by a variety of factors, including "testing, peer review, error rates, and 'acceptability' in the relevant scientific community."  *Kumho Tire*

---

a discretionary award of prejudgment interest because "Plaintiff's benefit-of-the-bargain damages were speculative and contingent upon the actions of an independent third-party." *Seton*, 2008 WL 1925180, at *13.  In *Seton*, however, the plaintiff's expected profit arose from her agreement to purchase shares in entities that were represented to her as processors and resellers of precious African gems, but which in fact, had been incorporated just one day prior.  *Id.* at *5.  Even absent the "fraud associated with the execution of the Agreement," plaintiff's benefit would have still been contingent upon "the issuance of a bank guarantee and the establishment of a line of credit." *Id*.  The indicia of fraud and dependency on unrelated third parties certainly elevated the speculative nature of expectation damages beyond that which could reasonably ascertainable.

*Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also Daubert*, 509 U.S. at 592-94.  At bottom, however, "the court's evaluation is always a flexible one, and the court's conclusions necessarily amount to an exercise of broad discretion guided by the overarching criteria of relevance and reliability." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999).  Applying these principles to this case, this Court finds neither party's motion persuasive and will accordingly deny both.

Turning first to USYSA, which seeks to preclude Chuck Faunce from attacking Clay Kniepmann's opinion regarding the costs that Elite avoided as a result of the breach.  ECF 102. Faunce is expected to testify that, in light of the relatively minimal amounts of time various Elite employees spent on Contract events, Kniepmann's opinion regarding avoided costs is flawed. Specifically, in his report, Faunce opines that:

1.  Given that:

    - Matthew Libber and Red Mosquito spent little or no time, Brian Pak spent  approximately 5% of his time and Dominic Popolizo spent approximately 15% of his time on the Contract Events; and further that

    - Elite's staff had capacity sufficient to service the Contract Events absent  Popolizo, Pak, Libber and Red Mosquito,

    the statement in the Kniepmann Report (§IV.C.11, Table 2, page 8) that a reasonable estimate of avoided costs due to the loss of revenue from the Contract Events in 2019 are the 2017 net pay amounts for Matthew Libber, Dominic Popolizo, and Brian Pak and the 2016-2018 average amount paid to Red Mosquito is incorrect.

ECF 102-2 at 3.

Faunce's assumptions regarding the respective amounts of time spent by Matthew Libber, Pak, and Popolizo on USYSA events are derived from his interview with USYSA's owner, Michael Libber.  USYSA contends that Libber's statements to Faunce are inconsistent with prior

representations in this action, in which he asserted that Elite did not track the hours spent by employees' on particular projects. *See* ECF 102 at 2 (*comparing* ECF 102-1 (Libber's deposition testimony stating that he did not know the percentage of time employees spent on USYSA events) *with* ECF 102-2 (Faunce's rebuttal report detailing Libber's estimations that Matthew Libber, Pak, and Popolizo spent 0%, 5%, and 15% respectively, of their time on USYSA events.)).   On this basis, USYSA argues that Faunce's opinion must be excluded.

Assuming without deciding that Libber's statements—upon which Faunce's assumptions are derived—is inadmissible or inconsistent with prior testimony, USYSA's argument still presents no basis to exclude Faunce's opinion.   The Federal Rules of Evidence expressly provide that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703.   Consistent with this provision, the Fourth Circuit recognizes that "expert opinion evidence is not objectionable" because the expert relied on underlying inadmissible evidence—including hearsay—so long as "the inadmissible information is of a kind reasonably relied upon by experts in the field." *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1143 (4th Cir. 1994); *see also United States v. Leeson*, 453 F.3d 631, 637 (4th Cir. 2006).   USYSA's dissection and analysis of various statements rendered by Libber throughout the course of this litigation, therefore, is somewhat beside the point.   USYSA does not contend that experts in the field of valuation, accounting, and consultancy do not regularly rely upon interviews with employees, agents, or officers of subject entities.   To the contrary, courts have routinely concluded that interviews with company personnel are the type of information that is normally and reasonably relied upon by such experts.   *See Rural Water District No. 5 Wagoner County, Okla. v. City of Coweta*, No. 08-cv-252-JED-FHM, 2013 WL 5558390, at *2 (N.D. Okla. Oct. 8, 2013); *Int'l Adhesive Coating, Co., Inc. v. Bolton Emerson Int'l, Inc.*, 851 F. 2d 540, 545 (1st Cir. 1988); *Arista Records*

*LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 424 (S.D.N.Y. 2009).  Finally, USYSA's contention, that Faunce's opinion should be precluded because it merely parrots Libber's statements, lacks merit.  Neither this Court, nor Faunce's report, denies that Libber's estimates informed Faunce's ultimate opinion that it is incorrect to include Matthew Libber's, Popolizo's, and Pak's respective annual net pay as avoided costs.  Faunce has not, however, merely reported his client's calculations as his own, or impermissibly "cloak[ed] unexamined assumptions in the authority of expert analysis."  *Brightview Grp., LP v. Teeters*, No. CV SAG-19-2774, 2021 WL 2627960, at *6 (D. Md. Feb. 8, 2021).  Rather, the estimates provided by Libber on one subject—Elite's former employees' division of time—informed Faunce's opinion on a distinct issue—the accuracy of Kniepmann's methodology and conclusions regarding Elite's avoided costs.  *See U.S. ex rel. Citylink Const., L.L.C. v. Eng'g Design Techs., Inc.*, No. 5:04-CV-166-FL(1), 2c, at *8 (E.D.N.C. Aug. 29, 2005) (Rejecting party's claim that opinion should be excluded because "expert relied too heavily upon the self-serving hearsay testimony of " defendant entity's president.).  USYSA's motion, therefore, will be denied.

Conversely, in its opposition to USYSA's motion, Elite asks this Court to exclude expert opinion testimony by Kniepmann regarding the costs that Elite avoided as a result of USYSA's breach.  ECF 106.  In relevant part, Kniepmann's report opines that USYSA's breach caused Elite to save the costs of Matthew Libber's, Popolizo's, and Pak's annual net pay; in his deposition, however, Kniepmann conceded that he lacked knowledge of the amount of time that these employees spent on the USYSA events.  On this basis, Elite insists that Kniepmann's opinion erroneously conflates correlation—the fact that these "three employees and a related consulting company . . . happened to leave Elite's employee following USYSA's breach"—with causation, and must therefore be excluded.  ECF 106 at 4-5.  Elite's argument fails on multiple grounds.

As an initial matter, Elite's motion to exclude Kniepmann's testimony—which it raised in its brief in reply to USYSA's motion—is untimely. Elite's motion was filed on February 28, roughly two weeks after this Court's deadline to submit motions in limine. *See* ECF 95 (specifying that motions in limine must be filed by February 14, 2022). Elite offers no explanation for its tardiness, and this Court does not condone efforts to evade its deadlines, or otherwise reward unjustified departures from this Court's orders. Second and more fundamentally, Elite's motion fails on the merits. In his report, Kniepmann specifies that his calculations are based on "direct evidence that Elite did in fact avoid specific payroll expenses due to the loss of the Contract Events." ECF 110-1 at 6. This evidence includes a document produced by Elite that "listed a number of employees with notes describing their employment status." *Id.* at 7. This document stated in relevant part: "Matthew Libber: Left for new job and because we froze salary because of loss of contract . . . Dominic Popolizio [*sic*]: Still with company but as a contractor was point person for ERL . . . Brian Pak: was let go to cut expenses because of loss of contract." *Id.* Kniepmann also referenced certain statements from Libber's deposition testimony that informed his opinion. *See id.* (quoting Libber's assertion that "Dominic (Popolizio) [*sic*] and my brother (Matthew Libber and Red Mosquito Consulting), left because of the ERL contract."). Even so, Elite contends that Kniepmann's opinion is so unreliable as to be inadmissible, largely on the basis of selected statements in his deposition, including his concession that "we don't have any data for the amount of time each employee spent on a given tournament." ECF 106-1 at 7. This Court is not persuaded that Elite's proffered excerpts negate the factual basis for Kniepmann's expert opinion. Elite's motion will be denied.

In sum, this Court concludes that the issues raised by both USYSA and Elite go to the weight rather than the credibility of their counterparties' respective expert opinions. The parties

will, of course, be free to argue the perceived deficiencies in Faunce's and Kniepmann's respective methodologies to the trier of fact through cross examination or presentation of contrary evidence. *See Daubert*, 509 U.S. at 596.  USYSA's, ECF 102, and Elite's, ECF 106, motions will therefore be denied.

## IV.    CONCLUSION

For the reasons set forth above, USYSA's Motion in Limine regarding attorneys' fees and evidence of liability, ECF 100, will be GRANTED IN PART and DENIED IN PART; USYSA's Motions in Limine regarding prejudgment interest, ECF 101, and expert testimony, ECF 102, will be DENIED; and Elite's Motion in Limine regarding expert testimony, ECF 106, will be DENIED, consistent with this Opinion.  A separate order resolving these motions follows.


Dated:  April 4, 2022                                 _____/s/_____
                                                                      Stephanie A. Gallagher
                                                                      United States District Judge